IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**JUAN RAMON JIMENEZ,**

    **Plaintiff,**

    v.

**ISLAND OASIS FROZEN COCKTAIL COMPANY, INC.,**

    **Defendant.**

Civil No. 09-1748 (GAG)

## OPINION AND ORDER

Plaintiff in this case, Juan Ramon Jimenez ("Plaintiff") brought suit against his former employer, Island Oasis Frozen Cocktail Company, Inc. ("Defendant"), following his dismissal from employment in 2009. Plaintiff invokes the diversity jurisdiction of this court, pursuant to 28 U.S.C. § 1332, alleging a number of causes of action under Puerto Rico law. Plaintiff alleges a breach of contract claim, under Articles 1206 and 1054 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3371 and 3018; violation of the state employment laws, pursuant to Law No. 80 of May 30, 1976, P.R. Laws. Ann. tit. 29, § 185(a) ("Law 80") and Law No. 148 of June 30, 1969, P.R. Laws Ann. tit. 29, § 501 ("Bonus Act"); as well as violation of the Fair Labor Standards Act, 29 U.S.C. § 205 ("FLSA"). Plaintiff also seeks a declaratory judgment from this court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., declaring that the non-compete agreement signed between the aforementioned parties is unenforceable.

Presently before the court is Defendant's motion for summary judgment (Docket No. 78). Plaintiff timely opposed this motion (Docket No. 88). By leave of the court, Defendant filed a timely reply to Plaintiff's opposition (Docket No. 94). After reviewing these submissions and the pertinent law, the court **GRANTS in part and DENIES in part** Defendant's motion for summary judgment.

**Civil No. 09-1748 (GAG)**                              2

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Furthermore, when submitting and opposing a motion for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a separate, short and concise statement

**Civil No. 09-1748 (GAG)**                                      3

of facts, set forth in numbered paragraphs, and supported by record citations as required in Local Rule 56(e). See D.P.R. Civ. R. 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule.

D.P.R. Civ. R. 56(c). Local Rule 56(e) provides that "a court may disregard any statement of fact not supported by a specific record citation to record material properly considered on summary judgment." D.P.R. Civ. R. 56(e).

**II.   Relevant Factual & Procedural Background**

After reviewing the parties' submissions for summary judgment, the court recognizes that a majority of the facts contained in Plaintiff's opposing statement of material facts (Docket No. 89) did not contain record citations as required by Local Rule 56. Accordingly, the court disregards those facts that were not supported by cited evidence on the record.

Island Oasis Frozen Cocktail Company ("Island Oasis") was incorporated in 1983 and is headquartered in Walpole, MA. Some time after its incorporation, Island Oasis registered to do business under the alias "Island Oasis Frozen Beverage Company."

From 1993 through June 2009, Plaintiff was employed by Island Oasis as its Sales Representative in Puerto Rico. Upon the commencement of his employment, Plaintiff received no guarantee by any employee of Island Oasis that he would be employed for life.

As part of his duties with Island Oasis, Plaintiff was responsible for the sales of frozen beverage programs to current and potential customers. As compensation for his services he received a base salary of $1,766.66 per month as well as commissions on products that were sold. Plaintiff's commission was based on the number of cases of Island Oasis products he personally sold to customers in Puerto Rico. Plaintiff received a 50% commission of the net profit of any case of

**Civil No. 09-1748 (GAG)**                        4

product he sold to his street accounts.[1]  He was also paid a commission on cases of product sold to company accounts[2], which were within Plaintiff's sales territory. He received a $1 to $2 commission per case sold on these accounts.  Plaintiff's monthly paycheck also included an advance on his commissions which was later deducted from future commissions he received.  Therefore, Plaintiff's monthly paycheck included his base salary, plus his commissions for the month, less any commission advances from the previous month.

On November 12, 1994, Plaintiff signed a non-compete and non-disclosure agreement. The agreement stated in pertinent part that, "in consideration of the employment and/or continued employment of the above employee," the employee shall not communicate with prospective clients for a period of 18 months after the termination of employment.  It also required the employee to hold in confidence all knowledge or information of a proprietary or confidential nature with respect to the business of the company.

In early 2009, Defendant decided to close its operations in Puerto Rico as it was not meeting its expected profits.  As a result, Plaintiff's position with Island Oasis was eliminated and his employment was terminated.  Since this time, Defendant has had no employees, offices, or other operations in Puerto Rico.[3]

At the time of his termination, Defendant paid Plaintiff commission at $3 per case on an estimated 15,000 cases of product sold between February and June of 2009.  As of June 26, 2009, when Plaintiff was notified of his termination, he had a negative commission balance of $2,544.92.

---

[1] Street accounts are accounts that Plaintiff had established himself through personal sales.

[2] Company accounts are accounts that were established by Island Oasis but happened to fall within Plaintiff's sales territory.

[3] Plaintiff contests this fact using a personal affidavit that was signed on August 10, 2010. Many of Plaintiff's declarations are contradicted by statements in his deposition testimony which was held on February 16, 2010.

**Civil No. 09-1748 (GAG)**                5

This amount was subtracted from the $45,000 for a gross amount of $42,455.08. Defendant paid this amount to Plaintiff, who acknowledges having received this amount. Plaintiff contends that the calculation of his commissions for 2009 was incorrect. Based on the calculations he has provided, he contends that he earned over $7.00 per case of products sold and therefore is entitled to $120,000 in commissions for 2009.

Following the termination of Plaintiff's employment, Defendant determined that it had not paid Plaintiff the annual bonus it was required to pay him under the Puerto Rico Bonus Act[4] for the calendar years 2007, 2008, and 2009. Defendant calculated that, based on the fact that it had never employed more than two employees in Puerto Rico at any point between January 1, 2006, and June 26, 2009, it owed Plaintiff $1,750 in unpaid bonuses. Plaintiff contests this calculation, alleging that Defendant has misinterpreted the law in calculating his bonuses for these unpaid years. Plaintiff contends that the unpaid bonuses should be for the years 2006, 2007, and 2008 and should equal a total of $41,906.21.[5]

---

[4] Under Puerto Rico's Bonus Act, a company must pay its employees who have worked over 700 hours annually an annual bonus. See P.R. Laws Ann. tit. 29, § 501. The statute reads in pertinent part:

> It is hereby provided that every employer who employs fifteen (15) workers or less shall grant a bonus equal to 2.5% of the total wage up to [sic] maximum of ten thousand dollars ($10,000) for the bonus to be granted in 2006, to 2.75% of the total wage up to a maximum of ten thousand dollars ($10,000) for the bonus to be granted in 2007, to 3% of the total wage up to a maximum of ten thousand dollars ($10,000) for the bonus to be granted in 2008. The total of the amounts to be paid by reason of said bonus shall not exceed 15% of the net annual profit of the employer, within the period comprised from September 30th of the preceding year until September 30th of the year to which the bonus corresponds.

Id. Under Section 502, delay of this payment for more than six months results in the employer's liability to pay another sum equal to the calculated bonus. Id. at § 502.

[5] Plaintiff reached this sum through the following calculations. According to the unauthenticated documents provided by Plaintiff, in 2006 he earned $145,775.68. (See Docket No.

**Civil No. 09-1748 (GAG)**                            6

According to its "Expense Reimbursement Policy" Defendant does not reimburse its Sales Representatives for business-related expenses they incur, unless expenses were due to performing duties "outside" of the employee's normal job duties. During his employment, Plaintiff was reimbursed by Defendant for a number of years for business expenses he incurred that do not fall within the terms of the "Expense Reimbursement Policy." At some point, Kip Hargreaves, Island Oasis' International Sales Manager, informed Plaintiff that the expenses for which he was claiming reimbursement fell outside the policy. Plaintiff contends that Defendant owes him a total of $12,872.22[6] in reimbursements.

### III.  Discussion

#### A.  Plaintiff's Submissions to the Court

Before delving into the substantive issues of law raised by Defendant's motion for summary judgment, the court must first address a number of issues presented by Plaintiff's submissions to the court.

#### 1.  Plaintiff's Factual Statements

As this court has stated above, Local Rule 56(e) provides that "a court may disregard any statement of fact not supported by a specific record citation to record material properly considered on summary judgment." D.P.R. Civil R. 56(e). A number of Plaintiff's Statements of Undisputed Material Facts as well as his denials in his Opposing Statement to Island Oasis Statements of Material Facts (Docket No. 89) did not contain supporting evidence identified by a record citation, or were unresponsive to Defendant's stated fact. As such, the court was compelled to disregard a

---

88-6 at 4.) According to Plaintiff, the corresponding statutory percentage for 2006 was 3%. This equaled $4,373.27. That number was then multiplied by 2, to account for the statutory penalty, equaling $8,746.54. This calculation was repeated for 2007 ($160,677.88 in wages, see Docket No. 88-6 at 5) and 2008 ($155,822.32 in wages, see Docket No. 88-6 at 2) at the corresponding values of 4.5% and 6%, respectively. These annual figures were then added together.

[6] This court believes this number was calculated from the figures found in Plaintiff's Exhibit b at Docket No. 88-2. However this document is untranslated and Plaintiff's corresponding documents do not explain how this number was calculated.

**Civil No. 09-1748 (GAG)**                                7

number of the factual assertions made by Plaintiff, and consider admitted many of Defendant's stated facts.[7]

Furthermore, with respect to Plaintiff's other statements of fact, Defendant contends in its reply brief (Docket No. 94), that Plaintiff has filed a "sham affidavit" for the sole purpose of creating issues of material fact in order to survive Defendants' motion for summary judgment. Defendant contends that Plaintiff's sworn statement (Docket No. 88-5) contains statements clearly contradicting those statements made by Plaintiff during his previous deposition taken on February 16, 2010 (Docket No. 92-1). Plaintiff has utilized said sworn statement primarily to support his Opposing Statement of Material Facts (Docket No. 89). Defendant, in its reply brief, asks the court to disregard the sworn statements which clearly contradict prior testimony and consider all of Plaintiff's facts, which are supported solely by these statements, as unsupported.

The First Circuit has followed the other Circuits in developing its own form of the "sham affidavit" doctrine. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citing Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572-73 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir. 1991)). In deciding Colantuoni, the First Circuit held that, "[w]hen an interested party has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." 44 F.3d at 4-5. In explaining the manner in which the court should treat such documents, the First Circuit declared that district courts are in a unique position to assess these "sham affidavits" and, therefore, are entitled to disregard portions of affidavits that include new information, whenever said information is contradictory to previous testimony and was clearly asked for in previous questions. See Hernandez-Loring v.

---

[7] Specifically, Plaintiff's statements and denials in Docket No. 89 at ¶¶ E, 4, 6, 8, 13, 16, 17, 20, 24, and 25 were not considered by the court when assessing the motion for summary judgment.

**Civil No. 09-1748 (GAG)**                                    8

Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).  The Hernandez-Loring court further emphasized that "in applying this rule, it is critical that there be no 'satisfactory explanation' since lapse of memory, new sources of information or other events can often explain a revision of testimony."  Id. at 54 (considering portion of affidavit where only inconsistency with previous testimony was specificity of language.)

Therefore in assessing whether or not to disregard Plaintiff's statements in his sworn affidavit, the court must analyze whether these statements are unambiguously contradictory to Plaintiff's previous testimony.  In conducting this analysis the court will address only those statements which contradict Plaintiff's previous deposition testimony and are pertinent to creating material issues of fact necessary for the survival of Plaintiff's claim.

In paragraph 5 of Plaintiff's affidavit, Plaintiff attests to his "personal knowledge that Island Oasis continues to do the same business in Puerto Rico and maintains several representatives in the island, as I was employed by them.  Island Oasis has neither made full, temporarily [sic] or partial closing of the operations of their establishment." (See Docket No. 88-5 at ¶ 4.)  In paragraph 6, he further attests to his knowledge that "Island Oasis has always operated through sales representatives in Puerto Rico and continues to operate through sales representatives." (See Docket No. 88-5 at ¶ 6.)  The statements from this affidavit were utilized to support the factual assertions made by Plaintiff at paragraphs 14 and 15 of Plaintiff's Opposing Statement of Material Facts (Docket No. 89).  These assertions clearly contradict the testimony given by Plaintiff during his deposition on February 16, 2010:

> Q: I ask you does IO [Island Oasis] have salespeople in Puerto Rico, employees of Island Oasis, at this time?
> A: Darn, I don't know if it has salespeople at this time.
> Q: The question is whether you know or are aware that there are other salespeople in Puerto Rico?
> A: No. No.  As far as I know, there are no salespeople of Island Oasis here, they sell from Island Oasis. . . .
> Q: Island Oasis has no offices in Puerto Rico, right?
> A: Not that I know of.  Now, if they have one now, I don't know.

See Docket No. 92-1 at 310.  Plaintiff's affidavit provides no explanation as to why these two sworn testimonies contain these contradictory statements.  The court is therefore inclined to disregard these

**Civil No. 09-1748 (GAG)**                                           9

portions of the sworn affidavit. See Hernandez-Loring, 233 F.3d at 54. Accordingly, the factual assertions at paragraphs 14 and 15 of Plaintiff's Opposing Statement of Material Facts lack evidentiary support, and therefore will not be considered by the court when assessing Defendant's motion for summary judgment.

### 2.  Plaintiff's Submitted Documents

Defendant contends that Plaintiff's remaining factual assertions must also be disregarded by the court as Plaintiff has failed to submit trial-worthy evidence in their support. Plaintiff relies upon the documents submitted at Docket No. 88-6 pages 2, 4, and 5 to demonstrate the wages he earned over the period of 2006-2009.[8] These documents are used to support the calculations of Plaintiff's Bonus Act and Vacation pay damages as calculated in the submitted Expert Report on Statutory Damages (Docket No. 88-1). Defendants argue that these documents were not authenticated and therefore cannot be considered by the court when ruling on summary judgment.

In order "[t]o be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). A "failure to authenticate precludes consideration of the[se] supporting documents." Id. As Plaintiff has failed to attach an authenticating affidavit to these documents, the court is unable to consider them in assessing Defendant's motion for summary judgment.

Furthermore, Defendant contends that Plaintiff's submitted expert report by Antoan Figueroa, Esq. ("Figueroa Report") should not be considered by this court because (1) there are no facts that demonstrate that Figueroa qualifies as an expert under Rule 702 of the Federal Rules of Evidence; (2) no expert testimony is needed in this case; and (3) the Figueroa Report impermissibly directs the court on the applicable law.

According to Federal Rule of Evidence 702, "a witness qualified as an expert by knowledge,

---

[8] Also included among these submissions is a release authorization by the Roxbury District Court of Massachusetts for a man by the name of Fernando Santana. This document appears to have no relevance to the case before this court.

**Civil No. 09-1748 (GAG)**                    10

skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702 (emphasis added). Pursuant to this rule, "when determining whether to admit the testimony of an expert, the Court must first examine who the proposed expert is: . . . does [he] possess the *knowledge, skill, experience, training or education* so that [he] can be qualified as an expert." Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 762 F. Supp. 1016 (D.P.R. 1991) (citation omitted) (emphasis added). Plaintiff has failed to provide any information from which the court is able to assess the qualifications of the proposed expert, Antoan Figueroa. Regardless, the court finds that no expert testimony is necessary for the calculations in this case. The applicable law in this case requires a straight-forward calculation that does not require the specific expertise of an expert. Accordingly, Plaintiff's submitted Figueroa Report will not be considered for purposes of summary judgment.

### B.     Breach of Contract Claims

Plaintiff contends that Defendant breached its contract by paying him $45,000 for an estimated 15,000 cases of product that were sold in Puerto Rico between February and June of 2009. Plaintiff alleges that the Defendant incorrectly calculated the commissions owed to Plaintiff by paying an estimated $3 per case when it was clear that over his sixteen-year career he had been paid at a rate of $7 per case.

To prevail in his breach of contract action, Plaintiff must first demonstrate the existence of a valid contract. See Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 152 (D.P.R. 2007) (citation omitted). Plaintiff has failed to satisfy this preliminary element. Plaintiff has not provided, nor alleged the existence of any written or oral contract that identifies the amount that he is paid per case for commissions. Instead, he has provided the court with an estimated calculation of $7.00 per case, which was allegedly established through custom and agreement. Plaintiff attempts to demonstrate this custom, utilizing a breakdown of the calculation of his monthly paycheck (Docket No. 88-6). According to the May 2008 calculation, Plaintiff received a total commission payment of $8,231.34. He received a commission payment of $6,070.34, which was calculated from the sale of 1,138 cases of product at prices ranging from $26.75 - $56.75 per case. He also received a

**Civil No. 09-1748 (GAG)**                              11

commission based on specific accounts (Casino and National), which he received $1 to $2 commission per case, equaling a total of $2,161. Plaintiff then divided his total commission payment ($8,231.34) and divided it by 1,138 cases to calculate his approximate payment per case at around $7. However, in calculating his commissions per case, Plaintiff has failed to include the cases which accounted for the $2,161 in commissions he received from the Casino and National Accounts. Therefore, Plaintiff's purported implicit contract for $7 per case is not supported by the documentary evidence he has provided, and as a result is not supported by any evidence on record.

The only contract that this court can identify is the contract entered into by the parties, whereby Defendant offered Plaintiff the amount of $42,455.08 ($45,000 less the amount of advanced commissions from the previous month), for unpaid commissions for the period of February to June 2009, which Plaintiff accepted. (See Docket No. 30-2 at ¶ 4.) Upon his acceptance of this payment, the contract was completed. Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to any breach of contract with respect to unpaid commissions for the year 2009. Accordingly, the court **DISMISSES** this claim.

In his breach of contract claim, Plaintiff also alleges that he is entitled to reimbursement for "reimbursable costs" which were accrued during his employment. Defendants move for summary judgment on this claim, contesting that the costs for which Plaintiff sought reimbursement did not fall within the terms of Island Oasis's Expense Reimbursement Policy. (See Docket No. 30-2 at 20, ¶ 21.) Defendant asserts the facts supporting its motion for summary judgment on this claim at paragraphs 18 to 22 of its Statement of Undisputed Material facts (Docket No. 79), and supports the same with statements from the declaration of vice president of Island Oasis, Peter Powers (Docket No. 30-2). In his Opposing Statement of Material Facts (Docket No. 89), Plaintiff fails to support his denials at paragraphs 19 to 22 with a record citation. Therefore, as previously discussed, the court will disregard these denials and consider Defendant's supported facts as admitted. Further, the court is unable to consider Plaintiff's evidentiary support for his denial at paragraph 18, as said document is neither translated nor is its relevance explained to the court. As Defendant's Statements of fact at paragraphs 18 to 22 are considered unopposed by this court, Plaintiff is unable to create a

**Civil No. 09-1748 (GAG)**                    12

triable issue of material fact with respect to his claim of monies owed to him for "reimbursable costs." Accordingly, the court **DISMISSES** this claim as well.

      **C.**      **Validity of the Non-Competition Clause**

Defendant states in its reply brief (see Docket No. 94 at 8) that it has conceded that the non-competition clause in the Employment Agreement (Docket No. 1-2) is unenforceable. Therefore, the court **DECLARES** that the non-competition clause is **UNENFORCEABLE**. However, this declaration does not dispose of the question of the enforceability of the non-disclosure clause. In its motion for summary judgment, Defendant contends that the non-disclosure clause of the agreement is still valid. (See Docket No. 78 at 14-15.) In support of this contention Defendant cites Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282 (D.P.R. 1998). In Cherena, this court held that, because an agreement containing a non-competition clause did not meet the criteria as delineated in Arthur Young & Co. v. Vega III, 136 D.P.R. 157 (1994) said clause was not enforceable between the parties. 20 F. Supp. 2d at 286. However, the Cherena court preserved the non-disclosure clause of the agreement, holding that, even though the non-compete failed to satisfy the requirements of consideration and reasonableness, the non-disclosure clause was preserved because of the application of a severability clause. Cherena, 20 F. Supp. 2d at 288-89. Mirroring the facts of Cherena, the agreement in this case also contains a severability clause. (See Docket No. 1-2 at ¶ 6.) The inclusion of this clause preserves the validity of the non-disclosure clause at issue. See Cherena, 20 F. Supp. 2d at 288-89. Therefore, the court **GRANTS** summary judgment in favor of Defendant and **DECLARES** that the non-disclosure clause is **ENFORCEABLE** against Plaintiff.

      **D.**      **Violation of Law 80**

Puerto Rico Law 80 prohibits dismissal of employees without just case." Rivera-Rosa v. Citibank, N.A., 567 F. Supp. 2d 289, 299 (D.P.R. 2008). To establish a *prima facie* case of discharge without just cause, Plaintiff must show that the "discharge [was] made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment." P.R. Laws Ann. tit. 29, §185b. Reasons constituting just cause for discharge include in pertinent part: "full, temporary or partial closing of the operations of the establishment." Id.; see also Salgado-

**Civil No. 09-1748 (GAG)**                               13

Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 175 (D.P.R. 2008). Defendant's Statement of Undisputed Material facts demonstrates that in early 2009, Island Oasis determined that its operations in Puerto Rico were not meeting its profitability expectations. (See Docket No. 79 at ¶13.) As a result, Island Oasis closed its operations in Puerto Rico and, in June 2009, eliminated Plaintiff's position, thereby terminating his employment. Id. Since then, Island Oasis has no employees, offices or other operations in Puerto Rico. Id. As previously discussed, Plaintiff's denial in his Opposing Statements (Docket No. 89) at paragraph 13 is not supported by any record citation, and therefore was disregarded by the court. See infra, section III.A. Further, the court has deemed the self-serving evidentiary support for Plaintiff's denials at paragraphs 14 and 15 to be inconsistent with his previous deposition testimony, and therefore, was also not considered when ruling on Defendant's motion. See infra, section III.A. As a result, Defendant's factual assertions at paragraphs 13 to 15 are deemed unopposed. By failing to oppose these assertions, Plaintiff is unable to demonstrate a triable issue of material fact as to his claim that the termination of his employment was unjustified under Law 80. Accordingly, the court **DISMISSES** Plaintiff's Law 80 claim.

      **E.**      **Bonus Act Claim**

Defendant has admitted that it did not pay Plaintiff "End of the year bonuses" as required pursuant to Puerto Rico's Bonus Act. See P.R. Laws Ann. tit. 29, § 501. However, in calculating the amounts owed to Plaintiff for Defendant's failure to pay, Defendant has misinterpreted the statutory language. The $10,000 maximum that is written into the statute is the maximum amount that an employer is required to pay a single employee in bonuses. Defendant incorrectly interpreted this maximum to mean that it was only legally mandated to provide a bonus for a percentage of the employees wages, up to the first $10,000 in wages. This interpretation is clearly not supported by the statutory language. Accordingly, in light of Defendant's admission, the court **ORDERS** Defendant **TO SHOW CAUSE** by September 27, 2010 as to why Plaintiff should not be provided the statutorily required bonus pay, as calculated by Plaintiff, for the contested years of 2006, 2007, and 2008. The court also **ORDERS** Plaintiff to resubmit **authenticated proof** of his earned wages during the relevant period by September 27, 2010, so as to allow the court to calculate the

**Civil No. 09-1748 (GAG)**                 14

appropriate damages owed to Plaintiff for Defendant's failure to comply with Puerto Rico's Bonus Act.

      **F.**      **Plaintiff's Vacation Leave Claim**

In his opposition, Plaintiff raises, for the first time, a claim for unpaid vacation leave. (See Docket No. 88 at ¶ 12.) A thorough review of the record demonstrates that Plaintiff failed to raise this claim at any point prior to the filing of his opposition. Plaintiff's "Second Cause of Action for Violation of Puerto Rico State Employment Laws" specifically pleads violations of Law 80 and the Bonus Act, but makes no mention of a claim for unpaid vacation leave. (See Docket No. 1 at ¶ 12.) Because this claim was first raised in Plaintiff's opposition to summary judgment, said claim was not properly brought before this court. See Ruiz-Sulsona v. Univ. of P. R., 334 F.3d 157, 160 (1st Cir. 2003) (affirming district court's dismissal of claim for reason that claim was first raised in plaintiff's opposition to summary judgment). Accordingly, this claim is **DISMISSED** without prejudice.

      **G.**      **Fair Labor Standards Act Claim**

In his opposition to summary judgment, Plaintiff voluntarily moved to dismiss his claim under the FLSA. Therefore, the court **DISMISSES** this claim.

**IV.**    **Conclusion**

Based on the foregoing, the court hereby **GRANTS in part and DENIES in part** Defendant's motion for summary judgment. The only matter pending before this court is related to Plaintiff's claim of damages arising from Defendant's failure to comply with the Bonus Act. The court **ORDERS** Defendant to **SHOW CAUSE**, by September 27, 2010, as to why Plaintiff should not be provided the statutorily required bonus pay, as calculated by Plaintiff, for the contested years of 2006, 2007, and 2008. The court also **ORDERS** Plaintiff to resubmit, by September 27, 2010, **authenticated proof** of his earned wages during the relevant period.

**SO ORDERED**

In San Juan, Puerto Rico this 14th day of September, 2010.

**Civil No. 09-1748 (GAG)** 15

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge